UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Vekuii Rukoro, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **17 cv 00062 (LTS)** |
| **v.** ) | |
| ) | |
| **Federal Republic of Germany,** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION, FOR LACK OF PERSONAL JURISDICTION FOR
FAILURE TO EXHAUST REMEDIES IN GERMANY AND UNDER THE DOCTRINE
OF *FORUM NON CONVENIENS*_**

**TABLE OF CONTENTS**

The Alleged Facts Relevant to Defendant's Motion………………………………………...1

Argument……………………………………………………………………………………….2

    I.       The Complaint should be dismissed for lack of subject matter jurisdiction as the Federal Republic of Germany is immune from prosecution under the FSIA's broad grant of immunity to foreign states.  The expropriation in violation of international law exception to that broad grant of immunity does not apply in this case…………………………………………………………….2

    II.      The Complaint should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)……………………………………………………………8

    III.     The Court should decline to exercise jurisdiction pursuant to the prudential exhaustion doctrine and the *forum non conveniens* doctrine……………………….9

        A.  Exhaustion of Remedies in Germany……………………………………………9

        B.  *Forum non Conveniens*………………………………………………………….11

CONCLUSION…………………………………………………………………………......…13

The Complaint in this matter was filed on January 5, 2017 by the Plaintiffs, Vekuii Rukoro, David Frederick, the Association of the Ovaherero Genocide in the USA, Inc. and Barnabas Veraa Katuuo. The Defendant, the Federal Republic of Germany is a foreign state as that term is defined in the Foreign Sovereign Immunities Act ("the FSIA"), 28 U.S.C. § 1602, *et. seq*. The Complaint alleges that the Defendant, who would otherwise be immune from jurisdiction in this Court under the FSIA, lost that immunity pursuant to 28 U.S. C. § 1605(a)(3), the FSIA's so-called expropriation exception in violation of international law.

### The Alleged Facts Relevant to Defendant's Motion

The Complaint alleges that the Ovaherero and Nama people were victims of unlawful taking of their property during the period 1885 to 1909 at the hands of the then German colonial authorities and that the Plaintiffs are representing the Ovaherero and Nama people. (Comp. ¶ 1). During the period set out above, the German colonial authorities allegedly seized their land and livestock. It is also alleged that the German authorities turned a blind eye to systematic rape and the use of the people in forced labor. (Comp. ¶ 2). Subsequently the German Imperial troops allegedly killed over 100,000 people and forced the survivors into concentration camps. (Comp. ¶ 3). The Complaint further alleges that there has been no reparation or compensation for these acts. The Plaintiffs also allege that they have not been permitted to participate in recent talks entered into by the Federal Republic of Germany and the Republic of Namibia. (Comp. ¶ 4).[1]

---

[1] The Federal Republic of Germany understands that for purposes of a motion to dismiss the Plaintiffs' allegations must be accepted as true. Given the serious nature of these allegations, the Federal Republic of Germany states unequivocally that its silence on these allegations is not to be regarded as acquiescence.

**Argument**

**I. The Complaint should be dismissed for lack of subject matter jurisdiction as the Federal Republic of Germany is immune from prosecution under the FSIA's broad grant of immunity to foreign states. The expropriation in violation of international law exception to that broad grant of immunity does not apply in this case.**

As a foreign state, the Federal Republic of Germany is immune from suit in the courts of the United States, including this lawsuit brought by Plaintiffs under the provisions of the FSIA. The Complaint does not allege that Germany waived its immunity and it has not done so. The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" except as provided in the Act. 28 U.S.C. 1604. ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided" by the FSIA's exceptions). Thus, the FSIA is the sole source of subject matter jurisdiction against a foreign state. *Cabiri v. Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999) (*citing Argentine Republic v. Amerada Hess Shipping Corp*, 488 U.S. 428, 439, 109 S.Ct 683, 690, 102 L. Ed. 2d 818 (1989)).[2] The broad grant of immunity is found in 28 U.S.C. 1603 and states:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act [enacted Oct. 21, 1976] a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided

---

[2] The Complaint mentions the Alien Tort Claims Statute ("ATS") in paragraph 16 of the Complaint. The Complaint does not explicitly rest its claim to subject matter jurisdiction on the ATS, nor could it, because the *Argentine Republic v. Amerada Hess Shipping Corp.* holding that the FSIA is the sole source of subject matter jurisdiction against a foreign state was a reversal of a Court of Appeals holding that the ATS could provide a basis for asserting jurisdiction over a foreign state notwithstanding the FSIA. *Amerada Hess Shipping Corp. v. Argentine Republic*, 830 F.2d 421(2d Cir. 1987). In addition, the Supreme Court has ruled that the ATS does not provide a cause of action for conduct occurring in the territory of another sovereign in part because "there is no indication that the ATS was passed to make the United States a uniquely hospitable forum for the enforcement of international norms." *Kiobel v. Royal Dutch Petrol. Co.*, 569 U.S. 108, 123 (2013).

in sections 1605 to 1607 of this chapter.

Under the FSIA, a foreign state is immune from the jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993). The exceptions to this broad grant are contained in 28 U.S.C. 1605.[3] The exceptions set forth in the statute provide "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 393 (2015). Thus, "if no exception applies, the district court has no jurisdiction." *Odhiambo v. Republic of Kenya*, 764 F.3d 31 (D.C. Cir. 2014); *cert. denied*, 2016 U.S. LEXIS 4064, 136 S. Ct. 2504, 195 L. Ed.2d 839 (2016).

> The statute [FSIA] must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity. [citation and fn omitted] At the threshold of every action in a district court against a foreign state, therefore, the court must satisfy itself that one of the exceptions applies -- and in doing so it must apply the detailed federal law standards set forth in the Act.

*Verlinden B. V. v. Central Bank of Nigeria*, supra 461 U.S. at 483-484.

Section 1605 (28 U.S.C. 1605) contains a list of exceptions to the general grant of immunity. Plaintiffs allege that this case falls within the exception contained in 28 U.S.C. 1605(a)(3).

The Plaintiffs allege (or more accurately partially allege) the expropriation exception to the FSIA's broad grant of immunity. To establish subject matter jurisdiction pursuant to the

---

[3] Section 1607 which addresses counterclaims by foreign states is not implicated in the instant motion.

3

expropriation or "takings" exception of the FSIA, a plaintiff must demonstrate each of four elements

> (1)   that rights in property are at issue,
>
> (2)   that the property was "taken,"
>
> (3)   that the taking was in violation of international law, and, depending on whether the defendant is a sovereign or an agency or instrumentality of a sovereign, either
>
> (4)(a)   that property . . . is present in the United States in connection with a commercial activity carried on in the United States by the foreign state (applicable to sovereigns), or
>
> (4)(b)   that property . . . is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States (applicable to agencies and instrumentalities of sovereigns).

28 U.S.C. § 1605(a)(3).

The Complaint alleges that property rights are at issue and that the property was taken. The expropriation exception on its face emphasizes conformity with international law by requiring a taking of property "*in violation of international law*." *Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling Co.* 137 S.Ct. 1312, 1317, 197 L.Ed.2d 663 (2017). The Complaint's allegations that the German Authorities expropriated land and livestock that belonged to the Herero and Nama people standing alone, is insufficient to establish the required violation of international law.

What is now known as Namibia was at the time in question German South West Africa, a colony of the German Reich. Herero and Nama were residents of that German colony and subjects of the German Reich, governed by German law. The Supreme Court in *Venezuela v. Helmerich & Payne* stated that: "A sovereign's taking or regulating of its own nationals' property within its own territory is often just the kind of foreign sovereign's public act (a '*jure imperii*') that the restrictive theory of sovereign immunity ordinarily leaves immune from suit." *Venezuela v. Helmerich & Payne*, 137 S.Ct. at 1321. Since the Herero and Nama people resided

in German South West Africa, which at that time was governed and ruled by the German Reich, subject to then applicable laws of the German Reich, the alleged expropriation was a part of the sovereign's regulation within its territory and as such did not violate international law applicable during that time. It is important to emphasize that what may now be recognized as international law is not identical to the international law applied over 110 years and cannot be applied to the case at hand. As a general proposition, international law does not permit retroactive application. *In re Agent Orange Product Liability Litigation*, 373 F.Supp.2d 7, 81 (E.D.N.Y., 2005) (citing Decl. of Kenneth Howard Anderson, Jr., Nov. 2, 2004). The Doctrine of Intertemporal Law, which stands for the premise that changes to the rules in international law do not apply retroactively. D'Amato, Anthony, *International Law, Intertemporal Problems in Encyclopedia of Public International Law* 1234, 1235 (1992). "[A] juridical fact must be appreciated in the light of the law contemporary with it, and not of the law in force at the time when the dispute in regard to it arises or fails to be settled", *Island of Palmas Case*, 2 U.N. Rep. Intl. Arb. Awards 829, 845 (1928), http://legal.un.org/riaa/cases/vol_II/829-871.pdf; *see also Jurisdictional Immunities of the State (Germany v. Italy)*, Judgment, I.C.J. Reports 2012, p. 99, 124 ¶ 58 (Judgt. of Feb. 3) ("the compatibility of an act with international law can be determined only by reference to the law in force at the time when the act occurred."); http://www.icj-cij.org/files/case-related/143/143-20120203-JUD-01-00-EN.pdf. Thus, domestic German law governed the relations between the German Reich and the residents of German South West Africa during the times in question and the alleged takings were governed by Germany's domestic law, no violation of international as applied in during the time between 1885 and 1909 occurred.

Moreover, the expropriation by a sovereign state of the property of its own nationals does not implicate settled principles of international law. *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1105 (9th Cir. 1990); *De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1396-98 (5th Cir. 1985); *Dreyfus v. Von Finck*, 534 F.2d 24, 31(2d Cir. 1976) (violations of international law do not occur when the aggrieved parties are nationals of the acting state); *Yang Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 101 (D.D.C. 2005). "[C]onfiscations by a state of the property of its own nationals, no matter how flagrant and regardless of whether compensation has been provided, do not constitute violations of international law." *F. Palicio y Compania, S.A. v. Brush*, 256 F. Supp. 481, 487 (S.D.N.Y. 1966), *aff'd*, 375 F.2d 1011 (2d Cir. 1967); *see also*, *United States v. Belmont*, 301 U.S. 324, 332, 81 L. Ed. 1134, 57 S. Ct. 758 (1937).

However, Plaintiffs also allege that the expropriation of property was a part and parcel of the genocide of the Herero and Nama people. The legal concept of genocide is not applicable in this case which concerns events that took place in the period between 1885 and 1909. Genocide as a violation of international law, was first defined as a legal concept by the Convention on the Prevention and Punishment of the Crime of Genocide, United Nations General Assembly Resolution 260 dated 9 December 1948, which is not retroactively applicable as to the alleged atrocities that took place between 1885 and 1909. A party is not bound by a treaty prior to the date such a treaty enters into force for it; treaties are not retroactive. *In re Agent Orange*, 373 F.Supp.2d at 81; see also *Mora v. New York*, 524 F.3d 183, 196 n.19 (2d Cir. 2008).

In addition, while genocide is recognized as a violation of today's contemporary international law, *Southern Peru Copper Corp.*, 414 F.3d 233, 244 n.18 (2d Cir. 2003), it has only once been applied to the FSIA's expropriation exception by the D.C. Circuit Court of

Appeals. *Simon v. Republic of Hung.,* 812 F.3d 127, 145 (D.C. Cir. 2016) ("Section 1605(a)(3)'s reference to 'violation[s] of international law' therefore includes genocide notwithstanding that a sovereign's actions against its own citizens traditionally fell outside the purview of international law."). While Defendant understands that *Simon* is not binding precedent in this circuit, Defendant's position is that the decision on this issue was wrong because actions by a sovereign against its own citizens' property is not a violation of international law as that term is used in section 1605(a)(3) and want to preserve this issue should the need arise in future proceedings. Furthermore, in any case, Simon concerns events that took place in the 1940s whereas in the case at hand, the claim is based on actions that took place around the turning of the century long before the legal concept of genocide was developed. Simon is therefore no precedent in this case.

In any case, the Complaint fails to satisfy elements 4(a) and as such the court lacks subject matter jurisdiction over the Federal Republic of Germany. Element 4(a) applies solely to a sovereign state and requires that the property or property exchanged for the property is present in the United States in connection with commercial activity of the foreign state in the United States. Element 4(b) applies solely to an agency or instrumentality of a sovereign state and is therefore not implicated in this case.

For this Court to have subject matter jurisdiction over the Federal Republic of Germany under the above-stated exception (identified above as element 4(a)), the Complaint must allege, with sufficient supporting facts, that the property in question is present in the United States. In order to determine whether, in fact, the property in question is present in the United States, the Court must look to the substance of the allegations. *Robinson v. Gov't of Malay*, 269 F.3d 133, 140 (2d Cir. 2001). Here, the Complaint contains no allegations whatsoever that the property at issue is present in the United States. A plaintiff must "prove the facts supporting the court's

jurisdiction under the FSIA, rather than simply to make a 'non-frivolous' claim to that effect." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. at 1316.  The Complaint supplies no facts (understandable, since there are none) to prove that the property is in the United States; that property exchanged for the property is present in the United States; or that the property is present in the United States in connection with[4] a commercial activity. Because the factual allegations in the Complaint are so woefully deficient, there is no subject matter jurisdiction over the Federal Republic of Germany under the expropriation exception to the FSIA broad grant of immunity.

## II.     The Complaint should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Under the FSIA, personal jurisdiction equals subject matter jurisdiction plus valid service of process.  28 U.S.C. 1330(b); *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 746 (2d Cir. 2000); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991).  As demonstrated above, Plaintiffs have failed to establish subject matter jurisdiction by establishing that one of the enumerated statutory exceptions to sovereign immunity applies. Hence, the Complaint fails to establish subject matter jurisdiction, which is the first part of the two-part test for personal jurisdiction under the FSIA.  The second prong of the test is that there be valid service which has been accomplished.  The Court does not have personal jurisdiction over the Federal Republic of Germany, as it does not have subject matter jurisdiction even if

---

[4] "The statutory term 'in connection,' as used in the FSIA, is a term of art, and we interpret it narrowly. Accordingly, we have noted that 'acts are in connection' with commercial activity so long as there is a 'substantive connection' or a 'causal link' between them and the commercial activity." (citations omitted) *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006).

service of process was sufficient.[5]  The Court should dismiss the complaint pursuant to Fed R. Civ. P. 12(b)(2).

**IV.     The Court should decline to exercise jurisdiction pursuant to the prudential exhaustion doctrine and the *forum non conveniens* doctrine.**

Even if the Court finds that it has subject matter jurisdiction over the cause of action and personal jurisdiction over the Defendants, it should decline to do so until and unless the Plaintiff exhausts it remedies in the Federal Republic of Germany.  Additionally, the Court should decline to exercise jurisdiction as Germany is a more convenient forum to resolve the matters raised in the Complaint.

   **A.  Exhaustion of Remedies in Germany.**

The prudential exhaustion of remedies doctrine in FSIA expropriation cases is grounded in the idea that comity among nations and "international law favors giving a state accused of taking property in violation of international law an opportunity to 'redress it by its own means, within the framework of its own legal system' before the same alleged taking may be aired in foreign courts" *Fischer v. Magyar Államvasutak Zrt*, 777 F.3d 847, 855 (7th Cir. 2015) (quoting *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661 (7th Cir. 2012)), except where requiring exhaustion would be futile or imaginary. *Ibid.* 777 F. 3d at 858.  In a recent federal district court case where the alleged violation of international law was genocide, the United States Circuit Court for the District of Columbia invited the district court "to consider on remand, should the defendants assert it, the third form of exhaustion argument: whether, as a matter of international

---

[5] The Federal Republic of Germany does not concede that service of the Complaint on the Federal Republic of Germany was effective. On the contrary, as stated in the Diplomatic Note dated November 27, 2017 addressed to the Embassy of the United States in Berlin, Germany, the Federal Republic of Germany restated its position that the service of the complaint violates the sovereign immunity of the Federal Republic of Germany.

comity, the court should decline to exercise jurisdiction unless and until the plaintiffs exhaust available Hungarian remedies." *Simon v. Republic of Hung.*, 812 F.3d 127, 149 (D.C. Cir. 2016). On remand the district court did consider exhaustion (as well as *forum non conveniens*) and dismissed based on both prudential exhaustion and *forum non conveniens*. *Simon v. Republic of Hung.*, 2017 U.S. Dist. LEXIS 161506 (D.D.C. September 30, 2017).

The lack of an exhaustion requirement in the FSIA is not a bar to application of the prudential exhaustion requirement because of its similarity to the *forum non conveniens* doctrine which "remains fully applicable in FSIA cases," despite lacking a statutory basis. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 100, 352 (D.C. Cir. 2002). The court in *Simon* set out three factors that need to be considered in determining whether it would be futile to require the plaintiff to exhaust in the courts of the defendant foreign sovereign. These are: (1) whether the (in this case) Germany's courts provide "congruent" remedies; (2) the existence of procedural roadblocks; and (3) the adequacy of German courts. *Simon.* at *22. The plaintiff bears the burden of demonstrating that attempting to exhaust any of their claims would be futile. *Fischer v. Magyar Államvasutak Zrt*, *supra* 777 F.3d at 867.

The Complaint in the instant case does not purport to address the exhaustion requirement or allege that to do so would be futile. The German judicial system has been found to be an adequate forum by United States courts. *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp. 3d 1179, 1190 (N.D. Ill. 2014) "Germany is among the 13 nations whose courts have been consistently deemed to be adequate alternative fora." *See Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 418 (D.N.J. 2008) (*citing* Tom McNamara, *International Forum Selection and Forum Non Conveniens*, 34 Int'l Law 558, 560-61 (2000)), *aff'd*, 529 F.3d 183 (3d Cir. 2008); *Deirmenjian v. Deutsche Bank, A.G.*, 2006 U.S. Dist. LEXIS 96772 (C.D. Cal Sept. 26,

2006).

The instant case, even more so than World War II cases, involves century old historical events of political significance for Germany. Most importantly, and in addition to the *Simon* factors, and as alleged in the Complaint, Germany is currently engaged in bilateral discussions with Namibia over the events alleged in the Complaint. The courts of the United States should not intrude on these ongoing efforts. "The dignity of a foreign state is not enhanced if other nations bypass its courts without right or good cause." *Philippines v. Pimentel*, 553 U.S. 851, 866 (2008).

### B. *Forum non Conveniens*

"The doctrine of *forum non conveniens* permits a court to 'resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute,' *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 507, if dismissal would 'best serve the convenience of the parties and the ends of justice.' *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 91 L. Ed. 1067, 67 S. Ct. 828 (1947)." *Murray v. BBC*, 81 F.3d 287, 290 (2d Cir. 1996). Notwithstanding the strong presumption in favor of the plaintiff's selected forum, the Court should dismiss this action under the *forum non conveniens* doctrine because an adequate forum exists in Germany and balancing the public and private interest factors favors dismissal. *Agudas Chasidei Chabad v. Russian Fed'n*, 528 F.3d 934, 950 (D.C. Cir. 2008). ("whether an adequate alternative forum for the dispute is available and, if so, whether a balancing of private and public interest factors strongly favors dismissal."). The private interests to be considered include,

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability (sic) of a

judgment if one is obtained.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Here, all the relevant documents and records are in Germany and possibly in Namibia and are in the German language. Many, if not all, custodians of records are in Germany. Process to obtain documents and/or witnesses is more readily available in Germany, as is service of that process.

The public factors include "the administrative difficulties flowing from court congestion; the local interest in having controversies decided at home; the interest in having the trial in a forum that is familiar with the law governing the action; the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6 (citing *Gilbert*, 330 U.S. at 509).

The instant lawsuit has no connection to the United States except for the fact that a plaintiff claims to be a resident of New York. As the Court in *Murray* said, "We are, quite frankly, at a loss to see how this lawsuit has any but the most attenuated American connection." *Murray v. BBC*, 81 F.3d at 293. Next, United States courts are surely less familiar with the applicable German laws that would govern this action as well as deciding conflict of law issues between German law and Namibian law. While plaintiffs are not entitled to a jury trial in a case where the defendant is a foreign sovereign, such a case would nevertheless add to the already clogged calendar of the Court as well as impose expenses on United States taxpayers related to the use of judicial resources to hear this matter.

The private and the public interest factors weigh in favor of a dismissal based on the

doctrine of *forum non conveniens*.

## CONCLUSION

The Federal Republic of Germany is immune under the FSIA as the expropriation exception does not apply. The expropriation exception does not apply as the actions upon which the claim is based did not violate international law rules applicable at that time nor have Plaintiffs substantially alleged that the property or property exchanged therefore is present in the United States. Failure to make a credible allegation in that regard is a fatal flaw which deprives the Court of subject matter jurisdiction and personal jurisdiction over the Federal Republic of Germany.

Even if the defendant is not immune under the FSIA the Court should decline to exercise jurisdiction and require the Plaintiffs to exhaust their remedies in Germany. Lastly, Germany is a more convenient forum and the factors that apply should permit the Court to dismiss the case on that basis.

Dated: January 12, 2018
s/ Jeffrey Harris
Jeffrey Harris, Esq. JH2121
Max Riederer von Paar, Esq.
Walter E. Diercks, Esq.
RUBIN, WINSTON, DIERCKS, HARRIS
 & COOKE, LLP
1201 Connecticut Avenue, N.W., Ste 200
Washington, D.C. 20036
(202) 861-0870
jharris@rwdhc.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Jeffrey Harris
Jeffrey Harris

Service List:

Kenneth F. McCallion, Esq.
McCALLION & ASSOCIATES LLP
100 Park Avenue – 16th   floor
New York, New York 10017